UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                 Case No. 09-CR-16

DENNIS CROUSE and SHARON SCHROEDER,

    Defendants.

**RECOMMENDATION AND ORDER ON DEFENDANTS' PRETRIAL MOTIONS**

On January 13, 2009, a grand jury sitting in the Eastern District of Wisconsin returned a two-count indictment against Dennis Crouse ("Crouse") and Sharon Schroeder ("Schroeder"). Both counts of the indictment charge that Crouse and Schroeder willfully and knowingly stole, purloined and converted to their own use and the use of another property belonging to the United States, namely Social Security benefits intended for B.W., in violation of 18 U.S.C. § 641. Both Schroeder and Crouse have entered not guilty pleas to the charges. Their trial is currently scheduled to commence on May 26, 2009, before Chief United States District Judge Rudolph T. Randa.

On March 18 and 19, 2009, Crouse and Schroeder, respectively, filed motions to dismiss the indictment against them. Additionally, Schroeder filed a motion for severance of her trial from Crouse's. The defendants' motions are now fully briefed and are ready for resolution. For the reasons which follow, it will be recommended that the defendants' motions to dismiss be denied and it will be ordered that Schroeder's motion to sever her trial from Crouse's be denied.

## II. FACTUAL BACKGROUND

The pertinent allegations in the indictment are as follows:

At all times relevant to this case, a disabled adult woman identified in the indictment as "B.W." was a recipient of Social Security benefits. B.W. was a resident of Total Life Healing Centers, a community-based residential facility in Elm Grove. (Indictment ¶ 2.) Schroeder and Crouse were partners and associates in the ownership and operation of Total Life. (Indictment ¶ 1.)

In the course of B.W.'s stay at Total Life, Crouse and Schroeder submitted an application to the Social Security Administration ("SSA") to have Total Life become the "representative payee" for Social Security benefits paid to B.W. (Indictment ¶ 2.) As a representative payee for B.W., Total Life was required to use any Social Security benefits received on behalf of B.W. solely for B.W.'s needs and to save any currently unneeded benefits for B.W.'s future use. Total Life was also required to notify the SSA when B.W. left the facility, otherwise changed her living arrangements, or was no longer the responsibility of the facility. (Indictment ¶ 3.)

On November 21, 2007, B.W.'s legal guardian moved B.W. to a different facility. Despite their obligation to the SSA to do so, the defendants did not notify the SSA that B.W. had been transferred to another facility. (Indictment ¶ 4.)

After B.W. had been moved to a different facility, B.W.'s legal guardian obtained summaries from Total Life purporting to account for all funds Total Life had received and spent on behalf of B.W. According to the indictment, the summaries that B.W.'s legal guardian received did not reflect or account for two payments that Total Life received from the SSA on October 22, 2007 and December 4, 2007. These payments, which were in the amount of $68,940 and $96,310, respectively, represented Social Security benefits intended for B.W. (Indictment ¶ 5.)

## III. DISCUSSION

In support of their motions to dismiss the indictment, both defendants claim that, absent government ownership of the property at issue in both counts of the indictment, federal jurisdiction is lacking in a prosecution for violations of § 641. Title 18, United States Code, Section 641 provides, in pertinent part, as follows:

> Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another . . . any . . . money, or thing of value of the United States or of any department or agency thereof, [shall be guilty of an offense against the United States].

18 U.S.C. § 641.

To establish a felony violation of 18 U.S.C. § 641, as charged here, the government is required to establish the following propositions beyond a reasonable doubt:

> First, that the money described in the indictment belonged to the United States and had a value in excess of $1,000;
>
> Second, that the defendant stole or converted that money to the defendant's own use or another's use; and
>
> Third, that the defendant did so with the intent to deprive the United States of the use or benefit of the money.

Seventh Circuit Pattern Jury Instructions, 18 U.S.C. § 641.

> In determining if stolen funds are things of value of the United States, the key factor is whether the government still maintained supervision and control over the funds at the point when the funds were stolen. Evidence that the federal government monitors and audits programs, regulates expenditures, and has the right to demand repayment of funds is adequate evidence that stolen funds or property were a thing of value of the United States under § 641.

3

*United States v. Scott*, 784 F.2d 787, 791 (7th Cir. 1986). Or, as the government frames the issue, the question is whether the government "retained supervision and control over the funds." (Gov't's Resp. at 2.)

Crouse, in his brief, states that the supervision and control test only applies "to determine ownership as between the federal government and an organizational conduit for federal funds." Crouse contends that, because Total Life was named as the representative payee by B.W.'s legal guardian, the standard is inapplicable. Rather, Crouse suggests that "[i]t seems self-evident that the funds, once distributed to [B.W.], were her funds . . . ." (Crouse Mem. at 3.)

I agree with the government that the supervision and control standard is the appropriate framework for determining whether the funds specified in the indictment are "mon[ies] . . . of the United States." Crouse's arguments in this regard attempt to circumvent the test for determining whether funds retain a federal character by simply stating that they do not have a federal character. Additionally, Crouse cites to a district court opinion that applied the supervision and control test to determine whether funds converted from the personal checking account of a SSA recipient were "mon[ies] of the United States." *See United States v. Howard*, 787 F. Supp. 769 (S.D. Ohio 1992). If the court in *Howard* employed the supervision and control test to determine whether funds converted from the personal checking account of a SSA beneficiary were "mon[ies] . . . of the United States," I see no reason why this court should not similarly employ the supervision and control test in this instance.

Based on the parties' briefs, this court's first task is to examine whether the central premise of the defendants' motions – the absence of government ownership of the property at issue in both counts of the indictment – is properly raised in a motion to dismiss for lack of federal jurisdiction.

If the defendants establish that their motions are, in fact, jurisdictional in nature, this court's next task is to determine whether the government can establish that this court has jurisdiction over the defendants' case. The court will address each issue in turn.

**A. Jurisdictional Analysis**

As noted above, the first issue in this case is whether this court may – without invading the province of the jury – determine at the motion to dismiss stage whether the funds described in the instant indictment are not, as a matter of law, "mon[ies] . . . of the United States."

The defendants contend that it is well within the bounds of a motion to dismiss for this court to examine the indictment to determine whether the indictment properly alleges the elements of a charge under § 641. (Schroeder's Reply at 3 (citing Fed. R. Crim. P. 12(e) and (g).) Specifically, the defendants contend that their arguments concerning this court's jurisdiction "rel[y] on seemingly undisputed facts to assert that monies deposited by SSA into an account controlled by [the defendants] and in [their] capacity as the 'representative payee' for a disabled beneficiary belonged to the disabled beneficiary, not to the government." (Schroeder's Reply at 3.) The defendants continue by directing the court's attention to the Sixth Circuit's opinion in *United States v. Klinger*, 61 F.3d 1234 (6th Cir. 1995). In *Klinger*, the court found that, in the context of a motion to dismiss for lack of federal jurisdiction based on the lack of governmental supervision and control over the funds specified in the indictment, the defendant's motion "present[ed] a pure question of law concerning the interpretation of 18 U.S.C. § 641 . . . ." *Id.* at 1237. The defendants conclude by asserting that their "motion[s] rel[y] on seemingly undisputed facts to assert that monies deposited by SSA into an account controlled by [the defendants] and in [their] capacity as the 'representative

5

payee' for a disabled beneficiary belonged to the disabled beneficiary, not the Government." (Schroeder's Reply at 3.)

The government contends that the arguments raised in the defendants' motions are not properly the subject of a motion to dismiss an indictment. According to the government, "both defendants base their claims on what the government must prove at trial and contend, relying on their assessment of the evidence, that the government cannot prove the charges." (Gov't's Resp. at 3.) In support of this position, the government points to the Seventh Circuit's decision in *United States v. Yasak*, where the court stated:

> A motion to dismiss is not intended to be a "summary trial of the evidence." Such a motion is directed only to the validity of the indictment or the information, and it tests only whether an offense has been sufficiently charged.

884 F.2d 996, 1001 (7th Cir. 1989)(citations omitted). *See also Hayle v. United States*, 815 F.2d 879, 882 (2d Cir. 1987) ("If the indictment alleges all of the statutory elements of a federal offense and the defendant's contention is that in fact certain of those elements are lacking, the challenge goes to the merits of the prosecution, not to the jurisdiction of the court to entertain the case or to punish the defendant if all of the alleged elements are proven."). Applying the *Yasak* holding to the instant case, the government asserts that "the present indictment properly invokes federal jurisdiction by alleging that the money the defendants converted was government property." (Gov't's Resp. at 5 (citing Indictment ¶¶ 6, 7).)

Only exceptional circumstances justify a court's decision to examine the factual predicate underlying an indictment. *See United States v. Risk*, 843 F.2d 1059, 1061 (7th Cir. 1988) (finding that it was only "under the unusual circumstances of th[e] case," which revealed that the government

had no case to prove, that the Seventh Circuit found that the district court had acted properly in dismissing an indictment). That having been said, in *United States v. Kristofic*, 847 F.2d 1295 (7th Cir. 1988), the Seventh Circuit reversed a defendant's conviction based on an alleged violation of 18 U.S.C. § 641. In *Kristofic*, the Seventh Circuit made it clear that, contrary to the government's arguments in the current case, "the [supervision and control] test was conceived as a means of resolving <u>the jurisdictional question whether the crime committed had been against the federal government</u>." *Id.* at 1299. (emphasis added.) *See also United States v. Lawson*, 925 F.2d 1207, 1209 (9th Cir. 1991) ("Whether the proceeds are government property within the meaning of section 641 is a question of law and is therefore reviewed de novo." (internal citations omitted)); *Klinger*, 61 F.3d at 1237 ("Since the facts are undisputed, this case presents a pure question of law concerning the interpretation of 18 U.S.C. § 641"); *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005) ("Because a question of law presented in a case involving undisputed facts can be determined without a trial of the general issue, Rule 12 authorized the district court to rule on Flores's motion to dismiss in this instance."). Given the foregoing, I am persuaded that consideration of the underlying "merits" of the defendants' motions, i.e., a jurisdictional challenge to the allegations in the indictment, would not be inappropriate. Thus, this court's next task is to review the facts alleged in the indictment to determine whether the government has a "case" to prove.

### B. Supervision and Control Test

In applying the supervision and control test to the instant case, the parties dispute whether the government exercises sufficient supervision and control over a representative payee of Social Security funds. The defendants contend that the funds specified in the indictment belonged to B.W. and were therefore not "mon[ies] of the United States," as the government claims. The government

7

responds that the government maintains supervision and control over SSA payments until the funds make it to their intended beneficiary.

In support of their argument, the defendants attempt to demonstrate the lack of supervision and control exercised by the government over SSA funds distributed to representative payees on behalf of their beneficiaries. The defendants note that "one becomes a representative payee only at the request of a beneficiary." (Schroeder's Reply at 5.) Additionally, the defendants explain that being a "representative payee" means that "SSA pay[s] [the representative payee] the person's benefits to use on his or her behalf." (Schroeder's Reply at 5 (citing Social Security Administration, *A Guide for Representative Payees*, 4 (Jan. 9, 2009) *available at* http://www.socialsecurity.gov.) The defendants continue by pointing out that funds "not spend toward the beneficiary's immediate needs are not returned to SSA; if benefits are unused, they are conserved by the representative payee on behalf of the beneficiary."(Schroder's Reply at 5 (citing http://www.socialsecurity.gov/payee/faqrep.htm).) The defendants further state that a representative payee is free to invest a beneficiary's surplus funds and to do so free from government oversight. The defendants contend that the fact that B.W.'s legal guardian demanded an accounting only underscores the absence of government supervision and control over the funds at issue.

The defendants conclude by asserting that "if and when – as alleged in this case – the representative payee converts social security benefits to his/her own advantage, a number of moral and legal wrongs occur but those wrongs do not include the theft of property belonging to the United States." (Schroeder's Reply at 6.) The defendants support this argument by reference to the district court's opinion in *United States v. Howard*, where, according to the defendants, the court held that the funds specified in the indictment "[were] property of the beneficiary and not the property of the

8

government for purposes of § 641." (Crouse Mem. at 4 (citing *United States v. Howard*, 787 F. Supp. 769 (S.D. Ohio 1992)).) Additionally, Schroeder points to the Seventh Circuit's opinion in *United States v. Wheadon*, where the court stated that the absence of a government reversionary interest in funds is a "particularly compelling" type of evidence in determining whether the government maintained supervision and control over the funds at issue. 794 F.2d 1277, 1285 (7th Cir. 1986).

The trouble with the defendants' reliance on *Howard* is that the facts of that case are markedly distinguishable from the facts alleged in the instant indictment. As the government notes, "in *Howard*, the Social Security benefits in question were actually deposited to the recipient's bank account, who was then free to spend the funds in any way she chose." (Gov't's Resp. at 5 (citing *Howard*, 787 F. Supp. at 771).) By contrast, in the instant case, the indictment alleges that Total Life was required: (1) to use any Social Security benefits it received on behalf of B.W.; (2) to use those funds solely for B.W.'s needs; and (3) to save any unneeded benefits for B.W.'s future benefit. The indictment also alleges that Total Life was required to notify the SSA when B.W. left the facility, otherwise changed her living arrangements, or was no longer the responsibility of the facility. (Indictment ¶ 3.) I find it difficult to equate an individual's obligations to the government when that individual draws from another individual's personal checking account with the defendants' obligations to the government as a representative payee.

Moreover, this court's review of applicable case law supports the government's argument (at least for purposes of this motion to dismiss) that it exercised supervision and control over the Social Security funds specified in the indictment. For instance, the Fourth Circuit, in *United States v. Gill*, 193 F.3d 802 (4th Cir. 1999), considered a case which presented facts similar to the facts

9

alleged in the instant indictment. The defendant in *Gill* was convicted of converting for her own use the Social Security funds intended for her disabled son and deposited by her into an account owned jointly by herself and her disabled son. In affirming the defendant's conviction under § 641, the Fourth Circuit rejected the defendant's arguments that the funds specified in the indictment were not "a thing of value of the United States." Instead, the court held that because the money had originated from the government and had not been expended for the benefit of the beneficiary of the funds, the funds remained the property of the United States. *Id.* at 804-05. Similarly, in this instance, although the funds were disbursed by the government, the funds were never, as the government required, expended on behalf of the intended beneficiary of the funds.

Additionally, this court's own review of the statutory and regulatory scheme governing funds issued to representative payees of Social Security beneficiaries suggests that the government may very well have exercised supervision and control over the funds specified in the instant indictment. Specifically, the SSA is required by law, "[to] make every reasonable effort to obtain restitution of misused benefits" in order to repay beneficiaries whose representative payee misuses their benefits. 20 C.F.R. § 404.2041(a). The SSA is also required by law to repay benefits in specified circumstances to beneficiaries whose representative payees have misused the beneficiaries' benefits. *See* 20 C.F.R. § 404.2041(b), (c). Finally, the SSA has the right to receive from a representative payee, upon the SSA's request, "a written report accounting for the benefits received . . . and make all supporting records available for review if requested by [the SSA]." 20 C.F.R. § 404.2035(e). As such, it appears that the ingredients for a finding of governmental supervision and control – that the federal government monitors and audits programs, regulates expenditures, and has the right to demand repayment of funds – are arguably present in the funds identified in the instant indictment.

10

To be clear, this court is not passing judgment on the sufficiency of the government's evidence. Rather, the court is stating that, as a matter of law, the indictment properly alleges each of the elements necessary to establish a felony violation of 18 U.S.C. § 641. Whether the government will be able to prove each of them (including whether the funds "belonged to the United States") remains to be seen. That is a question for the jury. As a result, it will be recommended that the defendants' motions to dismiss the indictment be denied.

**C. Motion to Sever**

In her reply brief, Schroeder "abandons her pursuit of severance." Schroeder requests that her motion to sever be dismissed without prejudice. (Schroeder's Reply at 7.) Thus, Schroeder's motion to sever her trial from Crouse's trial will be denied, without prejudice, as moot.

**NOW THEREFORE IT IS RECOMMENDED** that the defendants' motions to dismiss the indictment be **DENIED**;

**NOW THEREFORE IT IS ORDERED** that Schroeder's motion to sever her trial from Crouse's trial be and hereby is **DENIED, WITHOUT PREJUDICE, AS MOOT.**

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) - (C), Federal Rule of Criminal Procedure 59(a) - (b), and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any order or recommendation herein or part thereof may be filed within ten days of the date of service of this recommendation and order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to object in accordance with the rules cited herein waives your right to review.

11

Case 2:09-cr-00016-RTR    Filed 04/22/09    Page 11 of 12    Document 18

**SO ORDERED** this 22nd day of April, 2009, at Milwaukee, Wisconsin.

BY THE COURT:

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge
